IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| O'RELL R. WILLIAMS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) No. 4:23-cv-01155-AGF |
| ASCENSION MEDICAL GROUP – SOUTHEAST WISCONSIN, INC., | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

Plaintiff O'Rell R. Williams filed this contract action for employment benefits against his former employer, Defendant Ascension Medical Group - Southeast Wisconsin, Inc. ("Ascension"), in the Circuit Court of Ozaukee County, Wisconsin. Ascension removed the case to the United States District Court for the Eastern District of Wisconsin, arguing that the federal court had subject matter jurisdiction over Plaintiff's state-law claims seeking severance benefits because those claims were completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, and therefore were subject to federal question jurisdiction under 28 U.S.C. § 1331.[1]  Ascension argued that the federal court could exercise supplemental

---

[1]  Ascension has never contended that the federal court could exercise diversity jurisdiction in this case; nor could Ascension have done so in light of the parties' shared Wisconsin citizenship.  *See* ECF No. 1-1, Compl. at ¶¶ 1-2.

jurisdiction over Plaintiff's remaining state-law claims seeking a bonus under Ascension's "Short-Term At-Risk Compensation Plan" ("STARP").[2]  ECF No. 1.

Shortly after removal, Ascension filed a motion to dismiss Plaintiff's complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to transfer the case to this Court under 28 USC § 1404(a), based on binding forum selection clauses in certain of the relevant benefit plans and contracts.  ECF No. 6.  On September 14, 2023, following a status conference,[3] the Eastern District of Wisconsin summarily granted Ascension's motion to transfer, denied the motion to dismiss, and transferred the case to this Court.  ECF Nos. 13, 14.

The matter now comes before this Court on Ascension's motion (ECF No. 20) to dismiss Plaintiff's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Ascension argues that (1) to the extent that Plaintiff seeks severance benefits, each of Plaintiff's state-law claims are preempted by ERISA, and (2) to the extent that Plaintiff seeks a STARP bonus, Plaintiff's claims are not preempted by ERISA but nevertheless fail to state a claim under state law.  Plaintiff opposes the motion and has separately moved (ECF No. 25) for leave to amend his complaint.  Ascension opposes the motion for leave to amend on the grounds that the proposed amendment is futile and has been unduly delayed.

---

[2]  Plaintiff did not separate his claims seeking severance benefits from those seeking a STARP bonus; rather each of his claims seek both severance benefits and a STARP bonus under various contractual and equitable theories of state law.  ECF No. 1-1.

[3]  No transcript of the status conference has been made available to this Court.

For the reasons set forth below, the Court will grant Ascension's motion to dismiss in part, as it relates to Plaintiff's state-law claims for severance benefits, and the Court will dismiss those claims as preempted by ERISA. The Court will decline to exercise supplemental jurisdiction over the remaining portions of Plaintiff's claims seeking bonuses under STARP, and the Court will remand those remaining claims to the Wisconsin state court from which the case was removed. Finally, the Court will deny Plaintiff's motion for leave to amend without prejudice to Plaintiff seeking leave to amend in state court with respect any remaining claims.

## BACKGROUND

The following facts are taken from Plaintiff's complaint. The Court also considers "[d]ocuments necessarily embraced by the pleadings," meaning "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (holding that such documents may be considered on a 12(b)(6) motion); *see also Podraza v. Whiting*, 790 F.3d 828, 833 (8th Cir. 2015) (holding the same as to "documents incorporated into the complaint by reference").

Plaintiff began working as a physician at St. Joseph Hospital in 2008, and in 2015, following Ascension's acquisition of the hospital, Plaintiff continued his employment with Ascension. Plaintiff entered into an initial Employment Agreement with Ascension effective June 1, 2019 (the "Employment Agreement"), agreeing to provide services as a physician. ECF No. 1-6 at 1–17. On November 25, 2019, Plaintiff executed a Physician Leader Addendum to the Employment Agreement, pursuant to which he agreed to serve

3

as the Vice-President of Medical Affairs ("VPMA").  *Id.* at 18–25.  Effective June 27, 2021, Plaintiff executed a second Physician Leader Addendum to his Employment Agreement, pursuant to which he agreed to serve as a Medical Director.  *Id.* at 27–31.  In August of 2022, Ascension eliminated Plaintiff's position and terminated Plaintiff's employment due to the closure of the hospital where he worked.

**Terms of the Applicable Employment Agreements, Plans, and Policies**

1. Employment Agreement

Plaintiff bases his claims for severance benefits and a STARP bonus, in part, on his Employment Agreement.  The Employment Agreement provided that, in consideration for Plaintiff's services, Plaintiff would receive compensation in the form of an annual salary for the first two years, and then compensation in accordance with Ascension's then-current Physician Compensation Plan.  ECF No. 1-6 at § 2.2.  The Agreement further contained a "Fringe Benefits" section, which provided that Plaintiff would be "eligible to participate in such employee benefit plans and programs as described in Exhibit B; *however, participation in such benefit plans, programs, or related policies is subject to the conditions and terms of such plans, programs or policies*."[4]  *Id.*

---

[4]  Exhibit B provided, in relevant part:

> [Plaintiff] shall be provided with the benefits and employee expense reimbursement available to all similarly situated physician employees of [Ascension].  Nothing herein shall restrict, reduce or limit [Ascension's] right to modify, amend or terminate such fringe benefit programs as [Ascension] may determine in its sole discretion, provided that such modification applies equally to all physicians, of the same or similar status as [Plaintiff], employed by [Ascension].

ECF No. 1-6 at Ex. B thereto.

4

at § 2.3 (emphasis added).  This section further provided that "[t]his Agreement *does not modify the terms of participation contained in any employee benefit plan, program or policy of [Ascension], and such employee benefit plans, programs or policies will govern [Plaintiff's] benefit eligibility*."  *Id.* at § 2.3 (emphasis added).

2. Workforce Transition Position Elimination Policy

Aside from his Employment Agreement, Plaintiff bases his claims for severance benefits on Ascension's "Workforce Transition Position Elimination Policy," a copy of which is attached to Plaintiff's complaint.[5]  ECF No. 1-2 at 39–49.  The Policy stated that it was "intended to provide general parameters for addressing workforce transitions . . . ."  *Id.* at 47.

The Policy contained a section entitled "Position Elimination(s): Severance," which provided that "[d]isplaced associates . . . will be offered salary continuation and health benefits in exchange for executing a severance agreement and general release" the "[t]he salary continuation period varies by position band," and "Human Resources will determine which of the salary continuation period schedules applies based on the associate's position band."  ECF No. 1-2 at 45–46.  The section further stated that *"[a]ll aspects of severance pay and benefits are governed by the separation and release agreement or severance plan, if applicable.  This policy in no way supersedes a separation and release agreement, employment agreement or applicable severance plan*

---

[5]    Though Ascension disputes whether Plaintiff has plausibly pled that the Policy applied to Plaintiff, Ascension does not dispute that the Policy attached to Plaintiff's complaint was in effect at all relevant times of Plaintiff's employment with Ascension.

5

*document*." *Id.* at 46 (emphasis added)  The Policy included a table entitled "Severance Period by Position Type," which set forth a severance period based on job position.  Job positions were categorized as "Non-Banded," "Manager (Leadership Band 8)," and "Director (Leadership Band 7)," and the table included minimum and maximum lengths of severance pay (up to 26 weeks as the maximum for the Manager (Leadership Band 8) and Director (Leadership Band 7) positions).[6]  *Id.*

  3. <u>Ascension Severance Plan</u>

As Plaintiff concedes, Ascension also maintained an "ERISA plan which provide[d] for a specified amount of severance benefits for certain employees in some circumstances."  ECF No. 26 at 3 (referencing the "Ascension Severance Plan," ECF No. 1-8).  The parties do not dispute that the Ascension Severance Plan was in effect during the relevant period of Plaintiff's employment with Ascension and applied to Plaintiff.  The Plan stated that it was "intended to qualify as, and shall be interpreted to qualify as, a severance pay agreement to be treated as a welfare plan under ERISA . . . ."  ECF No. 1-8 at § 9.4.

The Plan offered severance benefits to certain designated employees and included detailed provisions setting forth the amount of severance to be paid based on an employee's job category (defined in terms of "Banded Associates" numbered 2 through 8, or "Non-Banded Associates") and years of service.[7]  The Plan also specified eligibility

---

[6]  Although the Policy did not define the job positions, the categories of "Banded" and Non-Banded" are also referenced in the Ascension Severance Plan, discussed below, which included respective definitions.  *See* ECF No. 1-8 at 3–9 (Article 2).

[7]  The Plan defined "Band" as:

criteria, set forth claims and review procedures designed to comply with applicable claims procedures under ERISA, and designated Ascension as the Plan Administrator, with the power to delegate its authority to administer the Plan. *See id.* The terms of the Plan were also summarized in a Summary Plan Description (ECF No. 1-5) and Plan Outlines (ECF No. 1-9).

4. STARP Plan

Ascension separately maintained the STARP Plan, which stated that it was intended to "create a single short-term incentive compensation arrangement for key contributors of many, but not all, of Ascension's health ministries and direct subsidiaries." ECF No. 7-1 at 4. The parties do not dispute that the STARP Plan was in effect during the relevant period of Plaintiff's employment with Ascension. The STARP Plan stated that it was not subject to ERISA, *id.*, and neither party has contended otherwise.

The STARP Plan provided that participants in the Plan were eligible to receive a bonus in the form of a short-term at-risk compensation award each year that represented a percentage of the eligible participant's base wages. *Id.*

---

a group of executive and leadership positions within [Ascension] or other Participating Institutions. Only those Bands set forth in an Addendum to the Plan are eligible to participate in the Plan. The specific positions included within each Band shall be determined by [Ascension's] Executive Vice President of Human Resources, or his or her designee, in his or her sole discretion.

ECF No. 1-8 at § 2.4. The Plan defined "Non-Banded" as "a position with a Participating Institution that is not included in any Band." *Id.* at § 2.16.

7

5. <u>Physician Leader Addenda</u>

Each of Plaintiff's Physician Leader Addenda executed in connection with his position changes set forth his then-applicable annual salary and then stated as follows: "Additionally, Hospital shall pay [Ascension], and [Ascension] shall pay [Plaintiff], any bonuses that [Plaintiff] is entitled to by virtue of his position (including but not limited to STARP)." ECF No. 1-2 at 15, 24, 30, 36.

**Termination of Plaintiff's Employment**

As indicated above, Plaintiff's position was eliminated and his employment was terminated in August of 2022. After eliminating Plaintiff's position, Ascension offered Plaintiff 14 weeks of severance benefits in exchange for a release of his legal claims. According to Ascension, this offer complied with the terms of the Ascension Severance Plan. Ascension also did not offer Plaintiff any STARP bonus. Plaintiff, relying on the Workforce Transition Position Elimination Policy and Employment Agreement, contended that he was entitled to 26 weeks of severance pay. Plaintiff further contended that he was entitled to a STARP bonus of 30% of his base salary, based on the STARP Plan, his employment offer letters, and his Physician Leader Addenda.

**Current Lawsuit and Motion to Dismiss**

As noted above, Plaintiff filed suit in the Circuit Court of Ozaukee County, Wisconsin. He asserts the following state-law causes of action, each seeking relief in the form of the severance pay and a STARP bonus that he asserts are due: (1) breach of contract, (2) promissory estoppel, (3) unjust enrichment, and (4) breach of the covenant

8

of good faith and fair dealing.  Plaintiff does not explicitly reference the Ascension Severance Plan or ERISA in his complaint.

Following transfer to this Court, Ascension now moves to dismiss the complaint to the extent that Plaintiff seeks severance pay, on the ground that any such claim is preempted by ERISA.  Ascension does not contend that ERISA preempts Plaintiff's claims seeking a STARP bonus, but it argues that Plaintiff fails to state a claim under each theory of state law alleged.

In response, Plaintiff argues that he is not seeking to enforce the Ascension Severance Plan but is instead seeking severance benefits promised to him in excess of those set forth in the Severance Plan.  He asserts that his "entitlement to [severance] benefits is found in his agreements with Ascension, and the promises made by Ascension about those agreements."  ECF No. 26 at 5.  As to his request for a STARP bonus, Plaintiff argues that each of his Physician Leader Addenda related to his promotions promised him a STARP bonus, and that he is entitled to such a bonus under the parties' contracts or as a matter of equity.

**Motion for Leave to Amend**

Plaintiff has separately moved for leave to amend his complaint.  The proposed amended complaint asserts the same four causes of action and again seeks severance pay and a STARP bonus.  However, Plaintiff proposes to add allegations describing the terms of the Physician Leader Addenda and its reference to STARP bonuses in more detail.  Plaintiff also proposes to add the following allegations:

9

>       20.    On April 22, 2021, Dr. Williams specifically asked about his eligibility for severance benefits under the Medical Director contract, and was assured, in writing, that he would remain eligible for 50 weeks of severance benefits in the new role.
>
>       21.    At no point was Dr. Williams told his eligibility for severance benefits was based on an ERISA plan. Instead, he was specifically informed he was eligible for 50 weeks of severance benefits based on his employment contract with Ascension.
>
>       22.    Dr. Williams' severance eligibility is separate and distinct from Ascension's ERISA severance plan.
>
>       23.    Dr. Williams specifically negotiated his Medical Director contract to preserve his eligibility for benefits, and signed the agreement based on representations that he would remain eligible for the same benefits he had as a Vice President.

ECF No. 25-1, Marked Proposed Am. Compl. at ¶¶ 20-23. In accordance with these new allegations, Plaintiff's proposed amended complaint contends that he is due 50 weeks (as opposed to 26 weeks) worth of severance pay[8] and a STARP bonus of between 10% and 30% of his base salary. *Id.* at ¶¶ 24, 27.

## DISCUSSION

**Jurisdiction and ERISA Preemption Over Claims for Severance Pay**

The Court must first address whether it has subject matter jurisdiction. The Eighth Circuit has admonished district courts to "be attentive to a satisfaction of jurisdictional requirements in all cases." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987).

---

[8]    It is not clear from the proposed amendment whether Plaintiff continues to base his claims for severance benefits on the Employment Agreement and the Workforce Transition Position Elimination Policy; rather, he appears to be proposing to change the basis for these claims from the two above-noted agreements to separate written assurances (not attached to the proposed amendment) promising 50 weeks of severance benefits.

10

"In every federal case the court must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments." *Carlson v. Arrowhead Concrete Works, Inc.*, 445 F.3d 1046, 1050 (8th Cir. 2006).

As indicated above, Ascension first removed this case to federal court by arguing that subject matter jurisdiction existed under 28 U.S.C. § 1331. Although Plaintiff's complaint on its face contains no federal cause of action, Ascension removed the case on the ground that, to the extent that Plaintiff's complaint sought severance benefits, those claims were preempted by ERISA. Ascension further argued that the Court could exercise supplemental jurisdiction over the remainder of Plaintiff's complaint, namely, his allegations and claims related to the STARP bonus.

"Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule," which requires that jurisdiction "must be determined from what necessarily appears in the plaintiff's statement of his own claim," rather than the existence of a "federal defense." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207, (2004) (internal citations omitted). However, an exception arises "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Id.* "This is so because when the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.* ERISA is one of these statutes. *Id.* at 207–08.

ERISA "is a comprehensive statute that sets certain uniform standards and requirements for employee benefit plans." *Minn. Ch. of Associated Builders &*

11

*Contractors, Inc. v. Minn. Dep't of Pub. Safety,* 267 F.3d 807, 810 (8th Cir. 2001) (internal quotations and citations omitted).  As the Eighth Circuit has explained:

> There are two types of preemption under ERISA: "complete preemption" under ERISA § 502, 29 U.S.C. § 1132, and "express preemption" under ERISA § 514, 29 U.S.C. § 1144.  Complete preemption occurs whenever Congress so completely preempts a particular area that any civil complaint raising this select group of claims is necessarily federal in character.  Claims arising under the civil enforcement provision of Section 502(a) of ERISA, 29 U.S.C. § 1132(a), including a claim to recover benefits or enforce rights under the terms of an ERISA plan, implicate one such area of complete preemption.  Because of complete preemption, any claim filed by a plan participant for the same relief provided under ERISA's civil enforcement provision, even a claim purportedly raising only a state-law cause of action, arises under federal law and is removable to federal court.
>
> In contrast, ERISA's express preemption clause preempts any state law that "relate[s] to any employee benefit plan." 29 U.S.C. § 1144(a).  Although express preemption does not allow for automatic removal to federal court, it does provide an affirmative defense against claims not completely preempted under ERISA § 502.

*Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 907 (8th Cir. 2005) (cleaned up and internal citations omitted).

"A state cause of action is completely preempted under ERISA if an individual, at some point in time, could have brought his claim under ERISA § 502, and where there is no other independent legal duty that is implicated by a defendant's actions." *Id.* at 914 (cleaned up and citation omitted).  The Court concludes, and the parties do not dispute, that the Ascension Severance Plan is an ERISA plan.  *See, e.g.*, *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 11–12 (1987) (describing key characteristics of ERISA plans). And given Plaintiff's concession that the Ascension Severance Plan applied to him, there

12

is no plausible dispute that his claim for severance benefits could have been initiated under § 502(a)(1)(B).

Thus, the question of jurisdiction turns on whether Plaintiff's claim for severance benefits here in fact stems from the Ascension Severance Plan or whether they instead stem from "promised benefits [that] were free-standing and were not premised in any way on the existing [ERISA] plan." *Eide v. Grey Fox Tech. Servs. Corp.*, 329 F.3d 600, 606 (8th Cir. 2003) (citation omitted); *see also Dakota, Minnesota & E. R.R. Corp. v. Schieffer*, 711 F.3d 878, 881 (8th Cir. 2013) ("[S]ubject matter jurisdiction turns on whether [the plaintiff] is seeking to recover 'benefits due to him under the terms of' one or more ERISA plans, 29 U.S.C. § 1132(a)(1)(B), rather than under an independent contract that is not an ERISA plan.") (citing *Eide,* 329 F.3d at 607).

In his current complaint, Plaintiff points to only two sources from which an alleged free-standing promise to pay severance could have stemmed: (1) the Employment Agreement, and (2) the Workforce Transition Position Elimination Policy. But both of these documents explicitly premise any promised severance benefits on an applicable benefit plan—in this case, that is the Ascension Severance Plan, which Plaintiff does not dispute applies to him. These agreements also expressly state that they do not modify or supersede any such plan. *See* Employment Agreement, ECF No. 1-6 at § 2.3; Workforce Transition Position Elimination Policy, ECF No. 1-2 at 46.

Therefore, the Court concludes that Plaintiff's state-law claims for severance benefits based on the Employment Agreement and Workforce Transition Position Elimination Policy are completely preempted by ERISA, and the Court has subject matter

13

jurisdiction over these claims under § 1331.  For the same reason, the Court must dismiss these claims as preempted.  *See, e.g.*, *Johnson v. U.S. Bancorp*, 387 F.3d 939, 942 (8th Cir. 2004) (holding that a state-law contract claim for severance benefits was completely preemption by ERISA and properly dismissed where "[t]he alleged promise was that benefits would be paid *in accordance with the* [ERISA plan]") (emphasis in original); *Benson v. Innovis Health, LLC*, No. 3:15-CV-47, 2015 WL 7307278, at *7 (D.N.D. Oct. 26, 2015) ("Because of the relationship between the employment agreement and the . . . severance plans, any breach of the duty to pay severance benefits is *not* independent of an ERISA plan."), *report and recommendation adopted,* No. 3:15-CV-47, 2015 WL 7312448 (D.N.D. Nov. 19, 2015); *Lee v. Lincoln Nat'l Life Ins. Co.*, No. 18-CV-2063-CJW, 2018 WL 5660553, at *4 (N.D. Iowa Oct. 31, 2018) (holding that a state-law breach of contract claim seeking benefits that duplicated the remedies available under ERISA's civil enforcement provision were completely preempted and must be dismissed).  However, the dismissal will be without prejudice to Plaintiff filing separate suit to seek relief under ERISA § 502(a), if appropriate.[9]  *See, e.g.*, *Davila*, 542 U.S. at 221 n.7 (discussing the possibility for such relief).

**Remaining Claims for a STARP Bonus**

There is no dispute that Plaintiff's claims for a STARP bonus are unrelated to any ERISA plan.  However, in light of the lack of diversity and the elimination of the claims

---

[9]  Plaintiff's current proposed amended complaint does not attempt to seek relief under ERISA, and Plaintiff has not suggested that he wishes to seek relief under ERISA at this time.

relating to ERISA from this case, the Court will exercise its discretion to decline supplemental jurisdiction and will remand these remaining portions of Plaintiff's complaint to state court.  *See, e.g.*, *Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d 639, 644 (8th Cir. 2008) ("A district court has discretion to remand or dismiss a plaintiff's state law claims when the federal character of a case has been eliminated."); *see also* 28 U.S.C. § 1367(c)(3).

Because 28 U.S.C. § 1447(d) references remand "to the State court from which it was removed," the case will be remanded to the Circuit Court of Ozaukee County, Wisconsin, where it originated.  *See Bloom v. Barry*, 755 F.2d 356, 358 (3d Cir. 1985) ("The only remand contemplated by the removal statute is a remand to the State court from which it was removed."); *Charlotte-Mecklenburg Hosp. Auth. v. Kinsinger*, No. 3:18-CV-38-FDW-DCK, 2018 WL 3069178, at *1 (W.D.N.C. June 21, 2018) ("If a case is remanded after transfer of venue in federal court, the appropriate court to receive the remand is still the court where the action originated.").

**Motion for Leave to Amend**

The Court will also deny Plaintiff's motion for leave to amend without prejudice to Plaintiff seeking leave to amend in state court with respect to any remaining claims. From the Court's review of the proposed amendment (ECF No. 25-1), it is unclear whether Plaintiff proposes to continue to seek severance benefits based on the Employment Agreement and the Workforce Transition Position Elimination Policy.  To the extent that he does, the amendment would be futile for the reasons discussed above. *See, e.g.*, *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018)

15

(noting that leave to amend should be denied if the proposed amendment would be futile).

On the other hand, to the extent that Plaintiff proposes to add new claims for severance benefits based solely on alleged written assurances promising Plaintiff 50 weeks of severance benefits that were independent of and did not refer to the Ascension Severance Plan or any other ERISA plan,[10] the state court is in the best position to decide whether to grant leave to pursue such claims.  *See, e.g.*, *Schieffer*, 711 F.3d at 882 (holding that federal courts lack jurisdiction over disputes regarding free-standing promises for benefits not completely preempted by ERISA); *Prudential Ins.*, 413 F.3d at 907 (holding that if a claim for benefits merely "relate[s] to" an ERISA plan, such that is it is expressly but not completely preempted, the preemption creates a defense but does not give rise to federal question jurisdiction).  Likewise, leave to assert any new allegations regarding the STARP bonus is best addressed by the state court.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss is **GRANTED in part and DENIED in part**, to the extent set forth above.  ECF No. 20.  The motion is **GRANTED** as to Plaintiff's claims seeking severance benefits based on the Employment Agreement and the Workforce Transition Position Elimination Policy, and those claims

---

[10]   Plaintiff has not attached copies of the written assurances to his proposed amended complaint.

16

are **DISMISSED without prejudice** to filing suit, if appropriate, under ERISA § 502(a).  The motion is otherwise **DENIED**.

      **IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over the remainder of Plaintiff's complaint, and the Clerk of Court shall **REMAND** any remaining claims to the Circuit Court of Ozaukee County, Wisconsin, from which the case was originally removed.

      **IT IS FURTHER ORDERED** that Plaintiff's motion for leave to amend is **DENIED without prejudice** to seeking leave to amend in state court following remand.  ECF No. 25.

                                                 _____
                                                 AUDREY G. FLEISSIG
                                                 UNITED STATES DISTRICT JUDGE

Dated this 17th day of April, 2024.